**MILLER v. UNITED STATES.**

**HOFFMAN v. SAME.**

Nos. 4583, 4584.

Circuit Court of Appeals, Third Circuit.
May 20, 1931.

Rehearing Denied July 20, 1931.

506

P. J. Friel and John Crolly, both of Philadelphia, Pa., for appellants.

Michael Stoney, Asst. U. S. Atty., and Paul Freeman, Asst. U. S. Atty. in charge, both of Philadelphia, Pa.

Before WOOLLEY, DAVIS, and THOMPSON, Circuit Judges.

WOOLLEY, Circuit Judge.

Long before trial Miller filed a written motion in the District Court for a bill of particulars, reciting the substance of two counts of an indictment which charge, in usual form, that he violated the National Prohibition Act (27 USCA) by possessing and transporting liquor on or about a named date, and divers dates thereafter, at a named place in the district, and averring that because of the "vagueness and indefiniteness of the charge" he was prevented from preparing his defense and would, should occasion arise, be precluded from pleading a former acquittal or conviction. The learned trial judge had before him no more than we now have on this statement. He knew, of course, that the motion was addressed to his discretion, Dunlop v. United States, 165 U. S. 486, 491, 17 S. Ct. 375, 41 L. Ed. 799, and that a motion of this character ordinarily should be granted whenever the accused is liable to be surprised by an issue for which he is not prepared. But the learned trial judge thought the motion vague as to the character of the information desired and found himself unable to determine just what the defendant wanted. So he denied the motion, yet, being careful of the defendant's rights, he denied it with leave to renew it at a time and under circumstances by which he could be shown that the information in the indictment was less than should have been given. Thus far it is very certain the judge committed no error. And, evidently, so thought the defendant at the moment because he did not ask for an exception; nor would one have been allowed, for this action of the judge was not subject to review. Rosen v. United States, 161 U. S. 29, 35, 16 S. Ct. 434, 40 L. Ed. 606; Dunlop v. United States, supra. Thus the whole matter was left in the defendant's hands, yet he went to trial and verdict without renewing his motion. As, naturally, the court did nothing more, we cannot see to what order or action of the court the assignment of error is addressed or how, in the circumstances, the court could commit error.

The remaining assignments of error relate to the manner in which the trial court handled the facts of the case, particularly those of the search and arrest. They are briefly as follows:

The Mahony Manufacturing Company operated a brewery at Ashland, or Millersville, Pennsylvania. It was suspected that the company was brewing illicit beer and effecting its transportation for sale through the common device of pumping it through a pipe to a nearby place where it would be racked off and taken away by trucks. It was suspected that the Hide and Tallow Factory, located about one hundred yards across the road from the brewery, was such a place.

Two members of the Pennsylvania State Constabulary, having been on watch for several days, heard a noise as of the handling of kegs in the Tallow Factory and intercepted a loaded truck as it was being driven from the premises in charge of the defendant Hoffman. The state troopers then entered the factory, found a complete racking room, took samples of beer which on analysis showed 4.6% of alcohol by volume, returned to the truck and searched it, finding it loaded with beer, samples of which showed a like alcoholic content. Miller had in the meantime appeared upon the premises giving orders to "dump that stuff," whereupon the beer was done away with. He also offered a very substantial money inducement to the state troopers to take the truck and drop all charges.

About fifteen minutes after the seizure and arrest, two federal prohibition agents, who had been watching the brewery, appeared and asked if they could be of any help. None was accepted or rendered. One of the federal agents took and tested samples of the beer, but that had nothing to do with the search and arrest and does not constitute co-operation with the state officials. The state troopers then arrested Hoffman and, accompanied by the federal agents, took him before a United States Commissioner by whom he was held for trial, and ran the truck with the beer to the government warehouse at Pottsville where they turned it over to the federal agents. Miller was later arrested on a warrant. Subsequently both men were charged with like offenses by separate indictments, were tried together, convicted and sentenced. Both appealed.

The court refused the defendants' motion, seasonably made, to quash the search and suppress the evidence seized thereunder and at the trial admitted over the defendants' objection evidence obtained under the search and seizure. These two actions of the trial court the defendants now assign as error on the ground that the search, seizure and arrest, though made by state troopers, were made not for a violation of a state liquor law but for a violation of the federal prohibition law; that the seizure and arrest so made by officers of a state were adopted by the United States as the basis of this prosecution and that they were unlawful because made without a warrant and without probable cause and generally because the case falls under the law of Gambino v. United States, 275 U. S. 310, 48 S. Ct. 137, 52 A. L. R. 1381, 72 L. Ed. 293.

The law of the Gambino Case is briefly as follows:

The Fourth Amendment is not directed to individual misconduct of state officers. Weeks v. United States, 232 U. S. 383, 34 S. Ct. 341, 58 L. Ed. 652. Evidence wrongfully secured by persons other than federal officers is admissible in prosecutions for federal crimes. Burdeau v. McDowell, 256 U. S. 465, 41 S. Ct. 574, 65 L. Ed. 1048, 13 A. L. R. 1159. However, evidence obtained through wrongful search and seizure by state officers who are co-operating with federal officials must be excluded. Flagg v. United States (C. C. A.) 233 F. 481, approved in Silverthorne Lumber Co. v. United States, 251 U. S. 385, 392, 40 S. Ct. 182, 64 L. Ed. 319. The same may be true when an unlawful search and seizure by state officers were made in the presence of a federal official. Byars v. United States, 273 U. S. 28, 47 S. Ct. 248, 71 L. Ed. 520. And it is emphatically true where an unlawful search, seizure and arrest were made solely on behalf of the United States. This last proposition is the crux of nearly every case of this character.

Applying this law to the facts of the Gambino Case the Supreme Court found that the search and seizure by troopers of the State of New York, whose liquor law—the Mullen-Gage Law—had been repealed, were made solely on behalf of the United States; and therefore the conviction, which rested wholly on evidence obtained by the unlawful search and seizure, was, because an invasion of the defendant's constitutional rights, invalid.

But applying the same law to the facts of the instant case, contrasted with those of the Gambino Case, we arrive at a different conclusion.

No federal official was present when the state troopers seized the truck. There is no evidence that while federal officers were watching the brewery and state officers were watching the Tallow Factory there was any contact, relation or co-operation between the two forces. Nor is there evidence that when later the state troopers made the search, seizure and arrest there was any co-operation between the two sets of officials. So far as the record shows, each was acting independently of the other all the time. True, the government accepted the benefits of the alleged unlawful search and seizure by accepting the truck and its contents when the troopers delivered them at the government warehouse and by using in evidence the property seized, as it could lawfully do unless the

state troopers were acting on its behalf. On this point the state troopers testified that they thought they were enforcing the National Prohibition Law (27 USCA). But this was merely their personal opinion which alone cannot give a federal character to their action, particularly in view of the fact that Pennsylvania has a state liquor law of its own to be enforced and that the State Constabulary ordered the troopers to this task without any instructions to enforce the federal law. From this evidence we cannot find that the search, seizure and arrest by the state troopers, if unlawful for lack of a warrant and probable cause, were made solely on behalf of the United States or in co-operation with officials of the United States within the meaning of the Gambino decision.

▆ The defendants next charge error to the court in overruling their objections to testimony concerning the commission of offenses at any place other than Millersburg, Pennsylvania. This assignment arises out of an admitted mistake in the Miller indictment which is serious or of no consequence according to the law.

The Hoffman indictment charges that the offenses were committed at Germansville Rd. S. of the Mahony Manufacturing Company at South Ashland in the Eastern District of Pennsylvania. According to the evidence that is where everything happened. The Miller indictment contains three counts. The first (withdrawn at the trial) charges that several persons conspired to run a beer pipe line "from a brewery known as the Mahony Manufacturing Company in Ashland, Pennsylvania, to a hotel building known as the Fountain Springs Hotel, Millersburg, Pennsylvania," in the Eastern District of Pennsylvania, and avers several overt acts, one at Ashland, others at Fountain Springs Hotel, Millersburg. The second and third counts charge commission of the offenses at Millersburg, Pennsylvania, in the Eastern District of Pennsylvania. Now there is no Millersburg in that district. There is, however, an unincorporated village or community lying on the outskirts of Ashland known locally as Millersville in which is situated the Fountain Springs Hotel before referred to. Ashland is in the Eastern District of Pennsylvania.

The learned trial judge, regarding the venue as stated in the proper district and because the name "Millersburg" was laid after a videlicet, denied the defendants' motion. We think he was right under the law (Rev. St. § 1025, 18 USCA § 556) which provides that:

"No indictment found and presented by a grand jury in any district * * * court of the United States shall be deemed insufficient, nor shall the trial, judgment, or other proceeding thereon be affected by reason of any defect or imperfection in matter of form only, which shall not tend to the prejudice of the defendant."

▆ This is a provision of long standing and its meaning is well understood. It has never been construed as permitting the omission of any matter of substance from an indictment but is applicable where the only defect complained of is that some element of the offense is stated loosely and without technical accuracy. Dunbar v. United States, 156 U. S. 185, 15 S. Ct. 325, 39 L. Ed. 390. The test is whether the indictment contains every element of the offense intended to be charged and sufficiently apprises the accused of what he will be required to meet, and, in case other proceedings are taken against him, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction. Horn v. United States (C. C. A.) 182 F. 721; Id., 219 U. S. 585, 31 S. Ct. 470, 55 L. Ed. 347. A mistake in expressing the substance of a crime, if sufficiently stated and its meaning is understood, will be looked upon as a formal defect. United States v. Jackson (C. C.) 2 F. 502. And, so, if an essential averment be faulty in form yet may by fair construction be found within the text of the indictment it is sufficient, United States v. Howard (D. C.) 132 F. 325, for then, manifestly, no wrong can be inflicted upon the defendant.

We are of opinion that the mistake in twice using the word "Millersburg" did not, in view of the rest of the indictment, mislead or mis-inform the defendant of the place at which the offenses were laid. Nor would it, in view of the rest of the indictment, preclude him from later pleading a former acquittal or conviction.

▆ The defendants' assignment that the court erred in refusing their motion for binding instructions is without substance.

The judgments are affirmed.