**UNITED STATES of America**

v.

**James K. GREEN, Appellant.**

**No. 22710.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Sept. 21, 1970.

Decided Nov. 12, 1970.

———————◆———————

Mr. Alan J. Berkeley, Washington, D. C. (appointed by this court), for appellant.

Mr. Gregory C. Brady, Asst. U. S. Atty., with whom Messrs. Thomas A. Flannery, U. S. Atty., and John A. Terry and William H. Collins, Jr., Asst. U. S. Attys., were on the brief, for appellee. Mr. D. William Subin, Asst. U. S. Atty., at the time the record was filed, also entered an appearance for appellee.

Before BAZELON, Chief Judge, WILBUR K. MILLER, Senior Circuit Judge, and McGOWAN, Circuit Judge.

BAZELON, Chief Judge:

This appeal raises issues concerning the admissibility of identification evidence. A woman was raped in her home at gunpoint. Ten days later when she and her husband were driving near their home she spotted appellant in the street. Thinking he looked like her assailant, she drove around the block to get a good look at him, and then drove off in search of a police officer. The couple found some officers in a patrol car and led them to appellant; the husband pointed him out to the officers, who promptly arrested him and took him to the precinct station. The couple also went to the station, where the wife again identified appellant. No lineup was ever held. Appellant was subsequently convicted of the several crimes associated with the event.[1]

On appeal he asserts for the first time that the precinct station confrontation was impermissible in the absence of counsel,[2] and that it was unnecessarily suggestive, in violation of his right to due process of law.[3] On that basis he challenges not only the admission of testimony concerning that confrontation, but also the victim's in-court identification, asserting that her ability to identify was irreparably tainted by the precinct station confrontation.[4]

■ Although it is unquestionably highly suggestive to present a single suspect to a witness for identification, nevertheless in some circumstances the procedure may be justified. Due process is not violated when a single suspect is promptly presented to a witness who is critically ill,[5] or to a witness whose recollection of the offense is still exceedingly fresh.[6] And the interest in speedy identification that justifies the failure to arrange a formal lineup may also justify the failure to provide the suspect with counsel.[7]

---

1. First degree burglary while armed, D.C. Code § 22–1801(a); armed robbery, § 22–2901; rape while armed, § 22–2801; assault with a dangerous weapon, § 22–502; carrying a dangerous weapon, § 22–3204. He was sentenced for a period of ten to thirty years.

2. United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967).

3. Foster v. California, 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 402 (1969); Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967).

4. No challenge is made to the spontaneous street identification, which was of course proper.

5. Stovall v. Denno, note 3 *supra*.

6. Russell v. United States, 133 U.S.App. D.C. 77, 81, 408 F.2d 1280, 1284 (1969); Wise v. United States, 127 U.S.App.D.C. 279, 283, 383 F.2d 206, 210 (1967), cert. denied, 390 U.S. 964, 88 S.Ct. 1069, 19 L.Ed.2d 1164 (1968).

7. Russell v. United States, note 6 *supra*.

It might be argued that similar considerations obtain in this case, that there is a strong interest in a prompt identification to determine whether the police officers have arrested the man who was seen on the street by the victim. On the other hand, it may be argued that the important question is whether the officers have arrested the offender, and not whether they have arrested the man recently seen on the street; therefore a suggestive confrontation cannot be held to confirm the street identification when it might taint the witness's recollection of the actual offense.

The question is a difficult one, which cannot be resolved on the present record. The circumstances of the challenged identification are far from clear. We cannot tell whether appellant was alone or in the presence of people suspected of other crimes, whether the viewing was deliberately staged or accidental. The bare state of the record makes it impossible to evaluate the confrontation against a claim that appellant was denied due process.

■ The same sparse record, however, contributes to our conclusion that any error was harmless. The government elicited only a single reference to the precinct confrontation, consisting entirely of the following exchange:

Q. Now sir, after the defendant was arrested do you recall whether or not Mrs. [———] identified him?

A. Yes, she identified the subject on the scene and also in the precinct stationhouse.[8]

The event was briefly mentioned again during cross-examination.[9] In the context of extensive testimony about the street identification, the impact of that single reference must have been negligible. Assuming arguendo that the precinct confrontation was conducted in an impermissible manner, this is one case in which we can say with confidence that beyond a reasonable doubt the testimony concerning that identification did not contribute to the conviction.[10]

■ The claim that the precinct confrontation tainted the victim's in-court identification can be similarly rejected. The victim observed her assailant closely and at length at the time of the crime, a fact which supports the conclusion that the in-court identification had an "independent source".[11] It is true that a suggestive confrontation before trial may distort the recollection of a witness and impair the integrity of an in-court identification. That might be the case, for example, if the witness had had only a fleeting glimpse of the man she picked out on the street, and had felt the need to confirm her identification by a closer look. But in this case the victim took care to observe the suspect closely and verify her first impression before calling the police officers. Any distortion of her recollection must be attributed to the perfectly proper street identifica-

---

8. Tr. 223. The witness was one of three police officers who testified for the government.

9. Q. * * * this man and this woman came down to the station and saw him, did they?
A. Yes, they did, mam.
Q. Where, where in the precinct did this take place?
A. Mr. and Mrs. [———] were in the Captain's office as this gentleman was brought into the precinct and they saw the gentleman again behind glass doors.
Q. So he didn't see her again?
A. She saw him. No, but he didn't see her.

Q. He wasn't aware of seeing her—
A. Well, whether he was or not I am not sure.
Tr. 225–26.

10. That of course is the test of harmless error established in Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed. 2d 705 (1967), and Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969).

11. See Clemons v. United States, 133 U.S. App.D.C. 27, 408 F.2d 1230 (1969) (en banc).

tion, and not to the subsequent precinct confrontation.

The record here is complete enough on these matters to render a remand unnecessary. On the general subject of appellate consideration of identification issues which have not been raised in the trial court, we refer to the discussion in Solomon v. United States, 133 U.S.App.D.C. 103, 106, 408 F.2d 1306, 1309 (1969).

Affirmed.

Senior Circuit Judge WILBUR K. MILLER concurs in the result.